# Richmond.

## WALKER, MOSBY AND CALVERT, INC. v. C. L. BURGESS.

### January 16, 1930.

### Absent, Chichester and Epes, JJ.

780

The opinion states the case.

*Aubrey E. Strode, Henry M. Sackett* and *Douglas A. Robertson*, for the plaintiff in error.

*Fred Harper*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

This is a proceeding by notice of motion brought by C. L. Burgess against Walker, Mosby and Calvert, Incorporated, to recover the sum of $2,255.00. The notice was as follows:

"Walker, Mosby and Calvert, Incorporated:

"Take notice that on Monday, December 27, 1927, I will move the Circuit Court of Lynchburg, Virginia, for judgment against you for the sum of $2,255.00, with interest thereon from the first day of July, 1926, the said sum being due and payable to me by you for labor performed and material furnished by me, in and about the construction of three certain dwelling houses in Center View Square, in the city of Lynchburg, Virginia, under a certain contract therefor negotiated and entered into and executed as follows:

"1. Under date of September 30, 1925, you entered into a written contract with one J. W. Senseney, in words and figures as follows:

" 'Memorandum of agreement, made this 30th day of September, 1925, between Walker, Mosby and

Calvert, Incorporated, party of the first part, and J. W. Senseney, party of the second part:

## "'WITNESSETH:

" 'That the parties of the first part hereby agree to furnish three lots in Center View Square for the sum of $2,300.00. The value of the lot on the east corner of Memorial avenue and Orchard street $850.00, and the value of the two lots on Orchard street is $750.00 each; and the parties of the first part further agree to furnish the cash capital to be used in the erection of three dwellings, one on each of the said three lots, according to plans design No. 12743A, design No. 12261A, design No. 12208. The said party of the second part hereby agrees to furnish all material and labor and erect and complete said three dwellings at actual cost, and guarantees that the said three buildings shall not cost more than $10,500.00.

" 'It is mutually agreed between the parties to this agreement that the said three houses shall be sold by either party to this agreement, and that the party making the sale shall have the usual commission for making each sale. The entire cost of the said property, including cost of financing and cost of commission on sales shall be accurately kept and when all three buildings have been sold the net profits or losses shall be divided equally between the parties to this agreement as follows:

" '50% to J. W. Senseney and 50% to Walker, Mosby and Calvert, Incorporated.

" 'WALKER, MOSBY AND CALVERT, INC.    (Seal)

" 'By A. W. MOSBY, Vice-President.

" 'J. W. SENSENEY,                         (Seal)'

"2. By virtue of said contract you and the said J. W. Senseney became, and were made, partners in the con-

struction and sale of the said three dwelling houses referred to in said contract.

"3. Sometime subsequent to the execution of the said contract of partnership, the said J. W. Senseney, acting for said partnership, entered into a contract with me, under which I was to furnish the labor and materials, for the plumbing and heating installations in said three dwelling houses, at the price of $2,825.00; —$925.00 for said labor and materials furnished for the dwelling house that became No. 506 Orchard street; $925.00 for the said labor and materials for the dwelling that became No. 510 Orchard street; and $975.00 for said labor and materials for the house at the corner of Orchard street and Memorial avenue.

"At the time the said contract was entered into, the said J. W. Senseney advised me of the said contract between you and him and exhibited the same to me.

"4. Pursuant to the said contract, I completed the same on my part as to Nos. 506 and 510 Orchard street, by completing the installation therein of the said plumbing and heating systems. And as of July 1, 1926, I had furnished labor and material in and about the plumbing and heating installation for the dwelling house on the corner of Orchard street and Memorial avenue to the extent of $405.00 in value.

"5. About that time the said J. W. Senseney absconded from the city and State, leaving numerous debts due creditors in the city unpaid, including a large debt due me.

"6. In August, 1926, the said J. W. Senseney was adjudicated an involuntary bankrupt, in the U. S. District Court for the Western District of Virginia; and his individual assets were administered in the said bankruptcy proceedings.

"7. In the said bankruptcy proceedings, I duly filed

my claim against the said J. W. Senseney for his total indebtedness to me, including the amounts due under the contract relating to the said three dwelling houses. But in said formal proof of said claim I specifically set forth my advice and belief that you were a partner of said J. W. Senseney, in the construction of the said three dwelling houses, and that my filing of the said claim against him in said proceedings, as to the amounts due for labor and materials furnished by me in and about the installation of the plumbing and heating systems in said three dwelling houses, was without prejudice to my rights to assert those items of claims against you as a partner of the said J. W. Senseney.

"8. Subsequently to the adjudication of said Senseney as a bankrupt, A. W. Mosby, an officer, director and stockholder of Walker, Mosby and Calvert, Incorporated, paid me $570.00 for the completion of the installation of the plumbing and heating system in said house at the corner of Orchard street and Memorial avenue, leaving due me on that particular installation $405.00.

"9. The individual assets of the said J. W. Senseney administered in said bankruptcy proceedings were wholly inadequate to pay his individual debts proved therein, and I received as my distributive share of said assets the sum of $176.50, an amount that did not pay my claim against him as an individual, leaving my claim against the said partnership wholly unpaid.

"10. You have had continuous possession and control of the partnership assets of the said partnership from the beginning of said partnership; and you have held and sold the said assets, and have collected the said purchase price thereof, and now hold the said partnership assets or the proceeds thereof.

"By reason whereof you are indebted to me for the said sum of $2,255.00, with interest thereon, as hereinabove set forth.

"C. L. Burgess,
"By Counsel."

. We have set out the notice of motion at large in this action for the reason that a disposition of the case depends upon the correctness of the trial court's action in overruling the demurrer filed by the defendant to the notice of motion and in entering judgment for the plaintiff. The pertinent grounds of demurrer relied upon are as follows:

"The said notice does not allege nor does the contract between the defendant and J. W. Senseney recited therein state facts sufficient to constitute a partnership between the defendant and J. W. Senseney.

"The said notice does not allege nor does it appear from the contract recited therein that the parties to the latter were to *carry on* a business for profit.

"The said notice does not allege nor does it appear from the contract recited therein that the parties to the latter were to carry on as co-owners a business for profit.

"The said notice does not allege nor does it appear from the contract recited therein that the parties to the latter were to participate as *principals* in the profits arising from the sale of the three houses and lots which form the subject matter of the contract.

. "The said notice and the contract show that the indebtedness to the plaintiff was incurred by J. W. Senseney in his individual capacity and not by the alleged partnership."

Plaintiff bases his right of recovery on the existence of a partnership between the defendant and J. W. Senseney. This conception of a partnership

agreement is evinced by the language employed in the notice of motion: "By virtue of said contract you and the said J. W. Senseney became and were made partners in the construction and sale of the said three dwelling houses referred to in said contract." There being no ambiguity in the written instrument which calls for the introduction of parol evidence to explain the existence or non-existense of a partnership relationship it must be determined by the terms of the instrument relied upon, construed in the light of the provisions of section 4359 of the Code of Virginia, 1924. In clause 6 of that section we read: "A partnership is an association of two or more persons to carry on as co-owners a business for profit." An examination of the agreement involved fails to disclose any language which clearly indicates that defendant and Senseney are associated in business. The language employed does, however, indicate that defendant entered into a contract with Senseney for the construction of certain houses which Senseney guaranteed should not exceed in cost the sum of $10,500.00; that Senseney was to "erect and complete" the buildings, that is, perform a "turn-key" job. There is no language in the agreement descriptive of the business to be "carried on."

There is no contention that defendant ever intended a conveyance of the real estate owned by it. All that defendant agreed to do according to the contract was to put up the lots and furnish the cash capital for the erection of the houses; all that Senseney agreed to do was to erect the houses. For the performance of his part of the contract Senseney was to be paid, after a sale of the property, fifty per cent of the net profits. While in some jurisdictions it was formerly held that the sharing of profits is a conclusive test of partnership,

this holding has never prevailed in this State, as is evidenced both by decision and statute.

In *Commonwealth* v. *Southeastern Iron Corp.*, 142 Va. 107, 128 S. E. 528, 532, Chief Justice Prentis said: "That it is now settled in this country that the sharing of profits and losses is not a conclusive test of partnership can be easily shown from the text-writers, the precedents and the statutes." See also *O. L. Standard Dry Goods Co.* v. *Hale & Pressley*, 148 Va. 640, 139 S. E. 300; *Berthold* v. *Goldsmith*, 24 How. (U. S.) 536, 16 L. Ed. 762.

■ ■ It is also to be observed that the agreement does not contemplate "carrying on a business for a profit," but only contemplates the doing of a single act. "Carrying on" a business is a well defined term and means the conduct of a business for a sustained period for the purposes of livelihood or profit and not merely the carrying on of some single transaction. *Cooper Mfg. Co.* v. *Ferguson*, 113 U. S. 727, 5 S. Ct. 739, 28 L. Ed. 1137; *Home Lumber Co.* v. *Hopkins*, 107 Kan. 153, 190 Pac. 601, 10 A. L. R. 879.

■ Another essential element of a partnership which is lacking in the agreement relied upon is the element of "co-ownership." There is no language which indicates that the parties were co-owners of the property. As we construe the agreement, Senseney was in no sense a co-owner of the property, but simply an independent contractor, who by agreement was to receive his remuneration out of any profits derived from a sale of the property. While it is permissible for a litigant to take every advantage afforded him by the law, there are some circumstances when to do so clearly indicates the state of mind actuating such conduct. That the plaintiff was in doubt as to the existence of a partnership between defendant and

Senseney is, we think, clearly demonstrated by the following quotation from the brief of plaintiff:

"A number of claimants filed mechanics' liens on the property in question, the legal title to which was in Walker, Mosby and Calvert; and Burgess, under suggestion from the vice-president of the corporation, which was denying any liability, did likewise. But he later abandoned his liens.

"Burgess was also one of the petitioning creditors who had Senseney adjudicated a bankrupt. In his proof of debt he set out all of his claims against Senseney, including his claims for work and materials on the three houses in question. But he stated, as to these, that he was advised they were partnership obligations, and he reserved the right to assert them as such against Walker, Mosby and Calvert, Incorporated."

Our conclusion is that the grounds of demurrer are well founded and should have been sustained by the trial court and final judgment should be entered in this court in favor of Walker, Mosby and Calvert, Incorporated.

*Reversed.*