Paul HARRINGTON, Appellant,

v.

Jack SORELLE, Appellee.

No. 7110.

United States Court of Appeals
Tenth Circuit.

Jan. 2, 1963.

R. F. Deacon Arledge, Albuquerque, N. M., for appellant.

David R. Gallagher, Albuquerque, N. M. (McAtee, Toulouse, Marchiondo, Ruud & Gallagher, Albuquerque, N. M., on the brief), for appellee.

Before BRATTON, LEWIS and SETH, Circuit Judges.

SETH, Circuit Judge.

This is an action for an accounting and for damages for breach of contract brought by one joint adventurer against the other. The defendant asks for an accounting also, and for judgment in the amount that may be shown due to him by such accounting. The agreement of the joint adventure was oral, had no stated duration, and provided for the participation by the parties in the retail sale of used cars at Grants, New Mexico. The trial court dismissed the complaint and also denied the relief sought by the defendant. The plaintiff appeals.

The basic facts are set out in the following findings made by the trial court, with which the appellant in his brief states that he "concurs and acquiesces:"

"1. That the Court has jurisdiction of the parties and the subject matter of the action.

"2. That the plaintiff and defendant, on or about the 1st day of May, 1960, entered into a joint venture agreement to be known as the H & S Auto Sales Company in Milan, New Mexico, which agreement was oral, and provided for the following:

"(a) That the defendant would provide a stock of 100 or more new and used cars which would be sold and the parties would share in the profits and losses on an equal basis.

"(b) That defendant would provide a finance company to purchase all paper (conditional sales contracts, notes and mortgages) acquired by H. & S Auto Sales Company, and that said company would retain all finance and insurance profits.

"(c) That such paper would be endorsed without recourse, but under a repurchase agreement whereby, in the event of a default contract and the recovery of the automobile by the finance company, the same would be repurchased by H & S Auto Sales at the balance then owed on said automobile less unaccumulated finance charges and insurance premiums.

"3. That the parties continued as joint venturers from on or about May 1, 1960, until October 8, 1960, when defendant, without prior notice to plaintiff, terminated said agreement.

"4. That between the dates of May 1 and October 8, 1960, the parties sold approximately 250 automobiles for cash and under time payment plan.

"5. That the parties did not have an agreement as to the duration of the joint venture, and the same could

be terminated at any time at the will of either party."

Basically, the case is one within the substantial evidence rule.

Although appellant agrees that the joint adventure was terminated, he does not agree with the appellee as to the date when, for accounting purposes, the losses to be charged to the co-adventure on repossessions should end. This has become the principal issue on appeal. The repossessions appear to be numerous, and the record shows that the cars when repossessed were generally in poor condition; consequently the losses were high. Each party at the trial used a report by auditors engaged by him, and these audits were difficult to reconcile because each covered a different period and to some extent different groups of cars. However the trial court did not find it necessary to determine the exact loss or profits of the co-adventure. It did find that large losses were suffered, and consequently held that the appellant was entitled to nothing by his complaint. In concluding that losses were so suffered, the trial court found:

"12.  That until all contracts have been liquidated or repossessions effected and the same sold, the exact profit and loss suffered by the parties is not ascertainable."

The appellant urges that the losses on repossessions after October 8, 1960, which was the date the enterprise was terminated, should not be included in the accounting. However since appellant's accountant in his report included such losses up to May 1, 1961, the appellant is willing to go that far. The trial court, as indicated above, included all repossession losses whenever they occurred.

The element of loss on repossessions is an important one and its determination is basically a fact question. The appellant concedes that he was to share losses with appellee, and agrees, by his acquiescence in finding of fact No. 2, that the co-adventure had agreed to repurchase defaulted paper from the finance company and to accept the repossessions. Appellant has also agreed that he should bear his part of these losses on default and repossessions up to May 1, 1961, by so indicating in the audit he submitted at the trial. No reason is stated as to why this particular date was selected by him. If the losses to May 1, 1961, are so included, the principle is thereby accepted that there should be included repossession losses occurring after the enterprise was terminated. It would seem that once this principle is accepted there would be no stopping place short of the last maturity date of the paper covered by the repurchase agreement with the finance company. This was essentially the finding of the trial court and is supported by substantial evidence.

As a separate point the appellant urges that the trial court was in error in not awarding him damages for breach of contract. The record shows that the appellee, while appellant was absent and without any warning, moved all the cars and records from the used car lot operated by the co-adventure to a new location of his own. This took place on October 8, 1960, and the parties agree that this ended the co-adventure, for which there was no agreed term or duration. The record shows that the appellee had provided the inventory of cars for the joint adventure from his own funds or from cars which he owned. The appellant by accepting finding of fact No. 5 agreed that either party could terminate the arrangement at will and at any time, nevertheless he asserts that the action of appellee was wrongful. Appellant in his brief states that the appellee so acted at "an unreasonable time." Also he argues that shortly before appellee's termination, the parties had very nearly reached an agreement on a settlement of accounts between them and upon the value of some of the assets. This the appellant urges provides a basis for damages. Even if such a point could be supported, appellant's real problem is whether he has a cause of action at all. Appellant is in a difficult position to argue that although this co-adventure for a con-

tinuing purpose could be terminated at any time and at will by either party, the appellee did so at an "unreasonable time." He argues that it was wrongful for one reason because the enterprise was making money. However the freedom given in the agreement to the parties to terminate the co-adventure could not be limited in its exercise to any particular time or circumstance.

The appellant cites Homestake Mining Co. v. Mid-Continent Exploration Co., 282 F.2d 787 (10th Cir.), on his point to show that there must be good faith between joint adventurers. This court did so hold in the cited case, and there is no question but that such good faith was required between the parties here. Similarly appellant cited Terminal Shares, Inc. v. Chicago, B. & Q. R.R., 65 F.Supp. 678 (E.D.,Mo.), which concerns primarily the sale of joint adventure interests; Libby v. L. J. Corporation, 247 F.2d 78 (D.C.Cir.), which held that loyalty to the enterprise and good faith between the parties is required; and Judson v. Buckley, 130 F.2d 174 (2d Cir.), which concerned an underwriting venture and held there was a limitation on costs to be charged. These cases all set out sound general principles governing the relationship of joint adventurers which are well-established. However we have before us an issue which relates only to the termination of a joint venture and whether it was done at such an "unreasonable time" as to give rise to a cause of action for damages. The arrangement here was one for a continuing purpose, and was not to accomplish a particular limited undertaking. In this aspect it resembles a partnership, but it is not necessary for us to consider which it is. Since it is a continuing one with no time limit, it may be terminated at the will of either party. O. L. Standard Dry Goods Co. v. Hale, 148 Va. 640, 139 S.E. 300; Posner v. Miller, 356 Mich. 6, 96 N.W.2d 110; Upper Penns Neck Tp., Salem County v. Lower Penns Neck Tp., 20 N.J.Super. 280, 89 A.2d 727. In this respect the case before us is entirely different from Eagle-Picher Co. v. Mid-Continent Lead & Zinc Co., 209 F.2d 917 (10th Cir.).

The actions of the appellee in ending the business were certainly abrupt and were taken without advance notice, but this was not such a violation of appellant's rights under their agreement as to give rise to a cause of action for damages.

Appellant argues that the case should have been referred to a special master. It does not appear that appellant asked for such a referral until the trial was over, and in any event this is a matter within the discretion of the trial court. 5 Moore, Federal Practice 2946; Buckley v. Altheimer, 152 F.2d 502 (7th Cir.). We find no abuse of discretion in the action of the trial court in refusing to make such a referral.

The findings of the trial court are well supported by substantial evidence.

Affirmed.